**CHAPMAN, Commissioner of Banking, et al. v. NIEMAN et al. (No. 228.)**

(Court of Civil Appeals of Texas. Waco. Oct. 8, 1925.)

**1. Insurance ⬤⇒430—Personal profit or advantage to employee, abstracting and misapplying employer's funds, unnecessary to render surety liable; "wrongful abstraction;" "willful misapplication."**

To render surety liable on bond to indemnify bank against loss by embezzlement, wrongful abstraction, or willful misapplication of funds or securities by employee, latter need not have derived any personal profit or advantage, and it is immaterial just what culpable act constitutes breach of his duty; "wrongful abstraction" meaning unauthorized and illegal taking or withdrawing of funds or securities from bank's possession and control and appropriation thereof to benefit of taker or another with taker's knowledge and consent, and "willful misapplication," a willful, unauthorized, and illegal application thereof to use and benefit of person making application or of another with former's knowledge and consent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willful Misapplication—Willfully Misapply.]

**2. Insurance ⬤⇒430 — Assistant cashier and surety on bond liable to bank and banking commissioner for loss from cashier's abstraction and misapplication of funds with aid of assistant.**

Assistant cashier, affirmatively aiding and assisting cashier to abstract, misapply, and appropriate to his own use money and securities of bank, with knowledge of his unlawful purpose, in manner materially contributing to success of his actions, breached terms of bond to indemnify bank against loss by embezzlement, wrongful abstraction, or willful misapplication of its funds or securities, and he and surety are liable to bank and banking commissioner in charge of its assets for resulting loss.

**3. Insurance ⬤⇒668(10) — Whether assistant bank cashier so aided cashier in abstracting and misapplying bank's funds as to render him and surety on his bond liable for resulting loss held for jury.**

Whether assistant cashier of bank affirmatively aided and assisted cashier in abstracting, misapplying, and appropriating to his own use money or securities of bank in manner materially contributing to his success, so as to render him and surety on fidelity bond liable to bank and banking commissioner for resulting loss, held for jury.

**4. Appeal and error ⬤⇒738—Single assignment of error in more than twenty separate rulings excluding testimony not considered as ground for reversal.**

Single assignment of error, complaining of more than twenty separate rulings excluding testimony, flagrantly violates Supreme Court rules for briefing, and will not be considered by Court of Civil Appeals as ground for reversing judgment.

**5. Evidence ⬤⇒354(2) — Bank's books and monthly statements and testimony as to discrepancies and irregular entries held admissible in suit on assistant cashier's fidelity bond.**

In suit against surety on assistant bank cashier's fidelity bond, bank's books and monthly statements to depositors and testimony as to discrepancies between and irregular and fictitious entries in them *held* admissible, though it was not shown that such officer actually made any of such entries, which were made with posting machine.

**6. Evidence ⬤⇒594—Credibility and weight of testimony of bank officer, sued with surety on fidelity bond, held for jury.**

Credibility of assistant bank cashier and weight of his testimony, in suit against him and surety on his bond for loss to bank by wrongful abstraction and willful misapplication of its funds and securities, *held* for jury, even though his testimony was uncontradicted.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by J. L. Chapman, as Commissioner of Banking, and another against Robert A. Nieman and another. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Frazier & Averitte, of Hillsboro, for appellants.

Jos. W. Hale, of Waco, for appellees.

GALLAGHER, C. J. This is a suit brought by appellants, J. L. Chapman, in his official capacity as commissioner of banking, and the First State Bank of Malone, to recover of appellees, Robert A. Nieman, as principal, and Maryland Casualty Company, as surety, the sum of $2,000 on a fidelity bond executed by them in favor of said bank, by the terms of which bond appellees obligated themselves to indemnify said bank against such pecuniary loss as it might sustain of money or other valuable securities embezzled, wrongfully abstracted, or willfully misapplied by said Nieman in the course of his employment in said bank.

Said bank was on the 6th day of March, 1923, declared insolvent and closed, and said commissioner took charge of all the assets of the same in his official capacity.

Nieman was employed as bookkeeper in said bank, but he also acted as assistant cashier, and was in charge of the same in the absence of the cashier. Such absences occurred frequently. There was testimony tending to show that the cashier of the bank had abstracted and appropriated funds belonging to it in the sum of $43,000; that said funds had been so abstracted and appropriated by him in various amounts and at various times, beginning about the time Nieman was employed in the bank or shortly thereafter, and continuing from time to time

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

until the closing of the same; that the system of bookkeeping used was known as the loose leaf system, with the account of each depositor on a separate leaf or sheet; that, as the cashier appropriated the funds of the bank from time to time, he would remove one or more of such sheets containing the record of deposits amounting to the sum so appropriated, thus leaving the assets and liabilities of the bank apparently in balance, and that the sheets so removed constituted the so-called "dummy ledger"; that said cashier frequently forged checks purporting to be signed by certain depositors, and caused the same to be entered on the books of the bank and charged against such depositors on the leaf or sheet showing their accounts, respectively, the effect of which was to reduce the apparent liability of the bank to its depositors and to aid in making the assets and liabilities of the bank as shown by its books balance at the close of business each day.

There was also testimony that statements were issued and mailed monthly to each depositor, showing the state of his account with the bank, and that the cashier required all such statements to be turned over to him for examination before mailing. There was also testimony that the cashier required Nieman to notify him at once when an examiner from the department appeared at the bank for the purpose of examining the condition of the same. The bank was examined several times during this period by examiners from the department of banking, but the insolvency of said bank and the abstraction and appropriation of its funds by its cashier were not discovered until the examination which resulted in the closing of the same.

There was no evidence that Nieman personally ever appropriated any of the funds or securities of the bank, or that he ever received any benefit from the funds or securities appropriated by the cashier. He denied any knowledge of the existence of the "dummy ledger" prior to the day before the closing of the bank, and claimed to have discovered it in the vault at that time by accident. There was no direct evidence contradicting his testimony on this point. There was testimony that on the occasion of the examination which resulted in the closing of the bank Nieman admitted that he knew of the shortage therein since shortly after his employment began, and that he and his assistant had helped conceal the same on the assurance of the cashier that he would make it good and that they would not get into trouble. There was also testimony that the existence of the dummy ledger was disclosed by Nieman, that he produced it on request, and that he, with the aid of his assistant, in about 30 minutes' time computed therefrom the amount of shortage with approximate accuracy.

Nieman testified that he kept the books of the bank and had done so for three years; that he made or caused to be made and mailed to every depositor a statement of his account each month; that said statements correctly showed all the transactions affecting such accounts, respectively, and that he never knew of any discrepancies except in a few instances with reference to the last statements sent out just prior to the closing of the bank; that he was familiar with the signature of every depositor and familiar with the state of each account by reason of daily handling of the books; that, beginning in the fall of 1922, he observed the cashier frequently write checks against the accounts of depositors and sign them himself; that he received such checks and ran them through the books in the regular course like other checks signed by the depositors in person; that about that time the cashier told him he was short some $25,000, but that he had fixed it up, but he did not say how; that a negro woman had deposited some money in the bank, and, so far as he knew had not checked on the same; that when she did present a check he examined the books and they showed she had checked out all the money, but she denied having done so, and the cashier drew his personal check in her favor for the amount; that he knew there were a number of notes in the note case that were made and signed by the cashier, and, were duplicates of notes that had been put up at the Federal Reserve Bank, and that such notes were furnished to the examiner and examined by him every time an examination of the bank was made.

The court instructed a verdict in favor of appellees, and his action in doing so is before us for review in this appeal.

[1] The obligation assumed by appellees by the execution and delivery of the bond sued on was to indemnify the bank for any pecuniary loss suffered by it by reason of three distinct classes of acts, to wit, embezzlement, wrongful abstraction, or willful misapplication of its funds or securities, each of which would constitute a breach of Nieman's duty as an employee. Appellants do not claim that the acts of Nieman shown by the evidence in this case constituted embezzlement. Wrongful abstraction, as used in said bond, means an unauthorized and illegal taking or withdrawing of funds or securities from the possession and control of the bank and the appropriation of such funds or securities to the benefit of the taker, or to the benefit of another with his knowledge and consent. Willful misapplication, as so used, means a willful, unauthorized, and illegal application of the funds or securities of the bank to the use and benefit of the person making such application, or the use and benefit of another with his knowledge and consent. Maryland Casualty Co. v. Farmers' State Bank & Trust Co. (Tex. Civ. App.) 258 S. W. 584, 586, 587, and

authorities there cited. In such cases it is not necessary that the employee shall have derived any personal profit or advantage from his breach of duty. It is sufficient if his actions have resulted in the abstraction or misapplication of the funds or securities of the bank or affirmatively contributed thereto, and another with his knowledge and consent has profited thereby. Nor is it material just what culpable act or acts constitute the breach of duty on the part of the employee. It is sufficient if the employee knowingly by such act or acts affirmatively aids or assists another in the wrongful abstraction or willful misapplication of funds or securities of the bank so as to make him in fact a party thereto. National Surety Co. v. First State Bank (Tex. Civ. App.) 244 S. W. 217, 218–221 (writ refused), and authorities there cited.

[2, 3] The fact that the cashier of appellant bank from time to time abstracted, misapplied, and appropriated to his own use various sums of money or various securities belonging to said bank, amounting in the aggregate to some $43,000, is shown by the undisputed evidence. If Nieman, with knowledge of his unlawful purpose, affirmatively aided and assisted him in doing so in such manner as to materially contribute to the success of such action or to successive repetitions of such action, he breached the terms of the bond sued on, and he and his surety are liable to appellants for the pecuniary loss sustained by reason of such breach. Whether he did so was, we think, under the facts and circumstances in evidence in this case, a question which should have been submitted to the jury. The court erred in giving a peremptory charge for the appellees. Since the case must on that account be reversed, we will not further comment upon the evidence in this connection.

[4] Appellants, by a single proposition, supported by a single assignment of error, complain of more than twenty separate rulings of the court, excluding testimony offered by them concerning alleged irregularities and fictitious entries on the books of the bank and in the monthly statements issued to depositors. Said assignment is such a flagrant violation of the rules for briefing prescribed by the Supreme Court that we would not feel justified in considering it in determining whether the judgment of the trial court should be reversed. Since such judgment must be reversed on other grounds, and, since the evidence so excluded will probably be again offered on another trial, we have decided to express our views on the admissibility thereof as a whole, without attempting to pass in detail upon the several rulings of the court excluding the same.

[5, 6] The evidence showed that the entries on the several sheets of the books were made with a posting machine, and that it was therefore impossible to determine from such entries who operated the machine when they were made. The objection to the excluded evidence was that it had not been shown that Nieman had actually made any of the irregular or fictitious entries so sought to be introduced and investigated. We think the evidence in the case furnished sufficient predicate for the introduction of the books of the bank and the monthly statements furnished to the depositors, and testimony concerning any discrepancies between them or any irregular or fictitious entries therein. Such evidence, if admitted, would be subject to explanation or rebuttal by said Nieman or by any other competent evidence appellees might see fit to introduce. He, however, is a party to the suit and interested in the result thereof, and his credibility as a witness and the weight to be given his testimony, even though uncontradicted, are questions for the jury. Moore v. Moore (Tex. Civ. App.) 259 S. W. 322, 326, 327.

The judgment of the trial court is reversed, and the cause is remanded.