## AMERICAN SURETY COMPANY OF NEW YORK v. AUSTIN, Banking Commissioner. (No. 2126.)

Court of Civil Appeals of Texas. El Paso. April 12, 1928.

Rehearing Denied May 3, 1928.

1. **Insurance** ⊗⟶624(7)—**In suit on fidelity bond given by bookkeeper, bookkeeper held not a necessary party.**

In suit brought on fidelity bond executed by bookkeeper to save bank harmless from losses sustained through bookkeeper's misappropriations, bookkeeper was not required to be joined or valid excuse shown for his nonjoinder.

2. **Insurance** ⊗⟶124—**Fidelity bonds are construed as insurance contracts; hence statutes relative to sureties are inapplicable (Rev. St. 1925, arts. 6244, 6245, 6251).**

Fidelity bonds are construed as contracts of insurance, and hence Rev. St. 1925, arts. 6244, 6245, 6251, relative to rights of sureties, have no application to sureties when sued on such bonds.

3. **Insurance** ⊗⟶665(4)—**Evidence held to show bookkeeper was confederate of cashier in misapplication of funds rendering surety liable on fidelity bond.**

In suit on bond given by bookkeeper to hold bank harmless from misappropriations of bookkeeper, evidence *held* to show that he was confederate of cashier in willfully misapplying funds of bank so as to render surety liable on bond.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Charles O. Austin, Banking Commissioner, against the American Surety Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

P. H. Swearingen and Powell & Green, all of San Antonio, for appellant.

Spencer & Rogers and A. J. Lewis, all of San Antonio, for appellee.

HIGGINS, J. The People's State Bank of Pearsall, Tex., was a State Bank which failed November 10, 1924, and passed into the hands of the banking commissioner for liquidation. For a number of years prior to its failure, Irby Hudson and Walter H. Harris were cashier and bookkeeper, respectively, of the bank, and were such up to the date of its failure.

Harris, as principal, and the American Surety Company of New York, as surety, executed a bond in favor of the bank in the sum of $2,000. In the bond, Harris is referred to as principal and officer and the surety company as surety. The bond was conditioned:

"That whereas, the said officer is in the service of the bank in the city of Pearsall, county of Frio, Tex., holding the position of bookkeeper, now, if the above-bounden officer and surety shall hold the bank harmless against, and pay to it such pecuniary loss as it may sustain of money or other valuable securities embezzled, wrongfully abstracted or willfully misapplied by said officer in the course of his employment as such, * * * then this obligation is void; otherwise to be and remain in full force and effect."

This suit was brought by the banking commissioner against the surety to recover upon the bond.

Appellee charged a breach of the bond in this: That Harris embezzled, willfully misapplied, and wrongfully abstracted from the bank the sum of $3,000, by charging against the account of Mrs. C. M. Slaughter on or about January 16, 1924, the charge being evidenced by a charge slip made by Irby Hudson, cashier, without Mrs. Slaughter's authority, and that Harris had guilty knowledge that Hudson, in making the charge slip, was embezzling and wrongfully abstracting $3,000 of the bank's funds. That, after the wrongful charge against Mrs. Slaughter's account, Harris continued from day to day until the bank was closed, in November, 1924, to carry forward on the individual ledger sheets of the bank the wrongful charge of $3,000, and prepared and mailed to Mrs. Slaughter, from month to month, statements showing that no such charge had been wrongfully made to her account.

It was also alleged that the bond was breached in this: That the board of directors of the bank had instructed the officers and employees of the bank, including Harris, not to permit the firm of Ferguson Bros., a copartnership, to overdraw, and that Harris, knowing that Ferguson Bros. had no funds in the bank, permitted or assisted in permitting them to overdraw more than $20,000, and in this manner wrongfully abstracted and misapplied the funds of the bank, That, in order to conceal from the bank and its directors these wrongful overdrafts, Harris, who kept the individual ledger sheets of their account, which was the bank's permanent record, failed to enter the various accounts thus overdrawn on the individual ledger sheets, but did post the items of overdrafts on the statement sheets which he mailed Ferguson Bros. from month to month, and that, in this manner, the permanent records of the bank were so falsified, during the two years prior to its closing, as to show that Ferguson Bros. at all times had a balance in the bank, when, in truth and in fact, they had a large overdraft which amounted on July 15, 1924, to more than $8,500, and, when the bank closed in November, 1924, it was in excess of $20,000.

In response to the various special issues submitted by the court, the jury found (1) that Hudson, cashier of the People's State

Bank, willfully misapplied to his own use the $3,000 which was charged to the account of Mrs. C. M. Slaughter; (2) that Walter H. Harris made a charge entry of $3,000 on the individual ledger sheet of Mrs. C. M. Slaughter in the People's State Bank of Pearsall, on or about January 16, 1924; (3) that at the time he made the entry he knew the $3,000 of the bank's funds, represented by the charge on the individual ledger sheet, were being misapplied by Hudson to his own use and benefit; (4) that Harris, at the time he made the entry, intended to aid and assist Hudson in the willful misapplication of the $3,000 from the bank; (5) that by his acts he affirmatively aided and assisted Hudson in misapplying the $3,000 in such manner as to materially contribute to the success of the misapplication by Hudson; (6) that Hudson misapplied the funds of the bank by means of overdraft fraudulently allowed to Ferguson Bros.; (7) that the sums so willfully misapplied by Hudson to the use and benefit of Ferguson Bros., by means of overdraft, was a minimum of $12,000; (8) that, at the time Walter H. Harris posted the statement sheets and ledger sheets of Ferguson Bros., he knew the funds were being willfully misapplied by Hudson to the use and benefit of Ferguson Bros. by means of overdraft; (9) that Harris, at the time he posted the statement sheets and individual ledger sheets, intended to aid and assist Hudson in the willful misapplication of the funds of the bank to the use and benefit of Ferguson Bros.; (10) that the acts of Harris did affirmatively aid or assist in the misapplication of the funds of the bank to the use and benefit of Ferguson Bros., in such a manner as to materially contribute to the success of such misapplication.

In answer to appellee's specially requested charge No. 1, the jury found that Harris, during all the time he kept the statement ledger and individual ledger, reflecting the $3,000 discrepancy between the two in the account of Mrs. C. M. Slaughter, intended to affirmatively aid and assist Hudson in the willful misapplication of the bank's funds.

Upon the findings made, judgment was rendered against the surety company for $2,000, with interest at the rate of 6 per cent. per annum from November 10, 1924, from which the surety company appeals.

[1, 2] Error is first assigned to the overruling of a plea in abatement presented by appellant. The plea was predicated upon the theory that Harris was the principal obligor in the bond and the suit could not be maintained against the appellant as surety without joining Harris or showing some valid excuse for his nonjoinder.

Bonds of the kind here sued upon are construed as contracts of insurance and subject to the rules applicable to such contracts and not to those applying to ordinary accommodation suretyship contracts. Therefore the statutory provisions relative to the rights of sureties (articles 6244, 6245, and 6251, R. S.) have no application to suits against sureties upon bonds of the nature here sued upon. Southern Surety Co. v. Austin (Tex. Civ. App.) 2 S.W.(2d) 1000; American Indemnity Co. v. Munn (Tex. Civ. App.) 278 S. W. 957; Southern Surety Co. v. Citizens' State Bank (Tex. Civ. App.) 212 S. W. 556; National Surety Co. v. Murphy-Walker Co. (Tex. Civ. App.) 174 S. W. 997; Western, etc., v. F. & A. M. (Tex. Civ. App.) 198 S. W. 1092.

[3] It was objected to each of the issues submitted that the evidence was insufficient to warrant the submission of the same.

For several years before the bank failed, Harris kept the books. The loose-leaf system of bookkeeping was employed. The individual ledger is a permanent record, upon which is entered daily the deposits of the bank's depositors and the checks drawn against their accounts, so as to show daily each customer's balance or overdraft; each customer having a page or leaf for his account. The statement ledger is likewise posted daily, and, when properly kept, is a duplicate of the individual ledger. The general ledger is a permanent record, upon which is posted daily from the individual ledger the total of the depositors' balances. At the end of each month the pages of the statement ledger are mailed to the depositors with their canceled checks and charge slips, thus advising each depositor of the condition of his account.

Mrs. C. M. Slaughter was a depositor having a balance of more than $6,000 to her credit. A charge ticket of $3,000 was made out in Irby Hudson's handwriting against Mrs. Slaughter's account. This ticket was by Harris, in January, 1924, charged against Mrs. Slaughter's account upon the individual ledger, but was not posted upon the statement ledger. Harris thereafter, until the bank closed the following November, mailed Mrs. Slaughter monthly her statement ledger leaves which failed to show this charge against her account. In this way the records of the bank were falsified so as to account for the withdrawal upon the permanent records, while the record sent to the customer did not disclose the same.

Harris testified:

"At his instruction (referring to the Cashier Hudson) it was left off the ledger. He told me it would be fixed up all right; he said it would be fixed up all right, and it so ran until the bank was closed. * * * I continued, from the time this difference occurred in Mrs. Slaughter's account, or from the time I was instructed by the cashier to show the difference, to prepare for mailing to her or for delivery to her statements showing a $3,000 discrepancy in the account."

As to the Ferguson overdrafts, the president of the bank testified to positive instruc-

tions given to all officers and employees of the bank to permit no overdrafts. For a long time prior to the closing of the bank Ferguson Bros. were heavily overdrawn. The items were not entered upon the individual ledger, but were entered upon the statement ledger, from which statements were monthly mailed to Ferguson Bros. by Harris which correctly showed the true condition of their account. As a result of the omission of the overdrafts from the individual ledger, the permanent records reflected at all times a balance to the credit of Ferguson Bros. The falsification of the record of the Ferguson account was by direction of Hudson. Harris testified that he was assured by Hudson the account would be fixed up.

The bank president testified:

"My office was located at the back part of the bank, and I had occasion to phone the house, my home, and when I stepped into the front part of the office, where the telephone is located, I noticed the statement ledger by the phone, and while I was talking to my wife, why I was turning over the leaves of the statement sheet—of the statement record, I ran across Ferguson Bros.' account, and I noticed that there was an overdraft of, in round figures, about $12,000. Well, it surprised me so much the first thing I did was to look for the date; there was no date on the statement—I mean in regard to the year, no date as to the year. So I immediately rang up the cashier and told him that I was down at the bank and I noticed that the Ferguson Bros.' account showed an overdraft, a big overdraft, and he said, 'Well,' he said, 'that is a mistake; Ferguson Bros. have a credit,' and he said, 'I will come down and show you.' 'Well,' I said, 'I am down here, and come down immediately.' In a few minutes he came down to the bank, and he said, 'That is all a mistake,' he said, 'Ferguson Bros. have a credit, and I will show you in a few minutes.' He went to the vault and opened the vault and brought out the individual ledger, turned to Ferguson Bros.' account, and showed the credit, if I remember, around $1,400 or $1,450. * * * And I told Mr. Hudson, I said, 'What about that statement?' He said, 'That is an old statement,' he said, 'you ought not to pay any attention to that at all,' he says, 'the individual ledger is the ledger where we keep the accounts.' I asked him again if he hadn't sent out statements, and he said, 'Yes,' he said, 'That is an old statement that does not apply to this account at all.'

"The Court: Did the statements have dates on them? A. The statements? No, sir.

"The Court: Statements of that character, what they call from the statement ledger, did they have dates on them? A. They had no date on them; they could have, but they didn't have any date on that statement. That is, it didn't have any date as to the year; it had the month, and the day of the month, but no year; that was, as near as I can recollect, in the latter part of August or first part of September,

1924. I had a conversation with Mr. Harris about that the next day, and it arose under these circumstances: When I went down to the bank in the morning, I suppose it was about 9 o'clock or a little after, or a little before, Mr. Harris was in the bank, and he followed me back to my office, and he said, 'I understand that you were considerably bothered about an account last night, Ferguson Bros.' account?' And I said, 'Yes; I was considerably bothered for a little while.'

"The Court: I would like to ask when that was? A. That was the morning after I found the statement in the ledger sheet, in August, 1924, either August, the latter part of August, or the first of September, 1924. I don't remember the exact date, because I didn't pay much attention to it. Mr. Harris said, 'Well,' he said, 'Mr. Hudson straightened that matter up so that you understood it?' I said, 'Yes; he told me that Ferguson Bros. had a credit of $1,450.' And he said, 'That is correct.' And I said, 'Well, I am certainly glad to hear that; and in future, if you have any old statements, I want you to file them away, they do not belong in the books at all, the old statements don't.' I never saw that statement after that day."

Just before the bank closed, a representative of the banking commissioner came to Pearsall to make an examination for San Antonio parties who contemplated buying some of its assets. He arrived in Pearsall Saturday. The night before Harris was in the bank working on the books. When the banking commissioner's representative arrived, all of the current books of the bank were missing. Later fragments of the books were found; they had been practically destroyed by fire.

The foregoing is a bare outline of the evidence. In our opinion it shows that Harris was the confederate and tool of Hudson, and, in the light of all the facts and circumstances reflected by the record, the evidence is sufficient to show that Harris was a party to such willful misapplication of funds of the bank as to render appellant liable upon his bond. Chapman v. Nieman (Tex. Civ. App.) 276 S. W. 302; National Surety Co. v. Bank (Tex. Civ. App.) 244 S. W. 217.

It seems to us the ruling upon the plea in abatement and the sufficiency of the evidence are the only substantial questions presented by this appeal. Appellant has presented numerous other assignments and propositions directed against practically every feature of the record. They have all been considered, are regarded as without merit, and call for no discussion.

Believing the record shows appellant's liability under the authority of the cases cited, and that no reversible error is shown by any of the numerous assignments and propositions, the judgment is affirmed.