**SHAW, Commissioner of Banking, et al. v. CONE et al.**
**No. 11069.**

Court of Civil Appeals of Texas. Dallas.
Jan. 14, 1933.

Rehearing Denied Feb. 11, 1933.

Locke, Locke, Stroud & Randolph, J. P. Dreibelbis, and Maurice E. Purnell, all of Dallas, for appellants.

Bartlett, Thornton & Montgomery, David W. Hardy, and P. G. Peurifoy, all of Dallas, for appellees.

VAUGHAN, J.

This suit was brought by appellants the Farmers' State Guaranty Bank of Navasota, Tex., now defunct, and James Shaw, the commissioner of banking of Texas, as statutory receiver of said bank, against appellee, Clarence S. Cone, Jr., an employee of the bank, to recover damages for the alleged faithlessness of said Cone as an agent of the bank, and against said employee, as principal, and appellee American Surety Company, as surety, to recover the sum of $2,500 on a $2,500 fidelity bond given to the bank to secure the bank against specified defaults of the said Cone. The effect of the allegations made by appellants was to recover damages arising from the alleged embezzlement, wrongful abstraction, and willful misapplication of money of the bank by the said Cone to the extent of $7,248.76, represented by shortages in the accounts of six depositors in the bank, and further charged him with aiding certain officers of the bank in accomplishing embezzlements, abstractions, and misapplications of the bank's funds, and with knowledge that said officers of the bank were fraudulently diverting and feloniously appropriating to their own use the money of the bank and for the purpose and with the intent of concealing their said transactions and contributing to the accomplishment thereof, and, in pursuance of a common design and plan, said Cone fraudulently manipulated the books of the bank, and made false, misleading, and fraudulent entries therein, whereby he actively and affirmatively caused and contributed to and participated in such embezzlements, abstractions, and misapplications. The condition of the fidelity bond was alleged and proven to be that said surety company would hold the bank harmless against and pay to it "such pecuniary loss as it may sustain of money or other valuable securities embezzled, wrongfully abstracted or willfully misapplied by said officer in the course of his employment as such"; that as to the accounts of the six depositors of the bank alleged to have been so manipulated and handled by said Cone appellants alleged, as to said accounts, loss to have been sustained respectively by said bank as follows: "(a) By manipulating the account of Mrs. John A. (or Eunice) McKay between January 22, 1925, and February 12, 1926, resulting in a pecuniary loss to the bank of $1,433.85. (b) By manipulating the account of Mrs. Fritz Meyer on and before August 18, 1924, to February 12, 1926, resulting in a pecuniary loss to the bank of $1,126.00. (c) By manipulating the account of Ben Silverstein from and after July 2,

1926, to February 12, 1926, resulting in a pecuniary loss to the bank of $275.98. (d) By manipulating the account of Wm. Gardner from and after March 1, 1923, to February 12, 1926, resulting in a pecuniary loss to the bank of $1,545.03. (e) By manipulating the account of G. C. Brooks from and after March 1, 1923, to February 12, 1926, resulting in a pecuniary loss to the bank of $527.-54. (f) By manipulating the account of Peter Yeorek, Special, from and after December 23, 1924, to February 12, 1926, resulting in a pecuniary loss to the bank of $2340.36."

Of the many pleas embraced within the answers filed respectively by appellees in defense of appellants' alleged cause of action, the record of this appeal only makes it necessary to state that same presented, on the merits, a general denial, release of liability of the said Cone on account of and against the several sums constituting the amount of $7,248.76 sued for on account of and by reason of certain services rendered by said Cone to the then banking commissioner, Chas. O. Austin, in assisting said commissioner and his personal representative, H. P. Audrey, then liquidating agent of said bank, in auditing the books of said bank and fully investigating the affairs of said bank, and any and all claims which said bank had against the officers of said bank, to wit: R. L. Renick, cashier, and J. T. Evans, vice president, alleged to have, in fact, received the several sums of money to their own use and benefit comprising the said sum of $7,248.76 sued for, and, further, that said Cone did not receive any benefit from and on account of the abstraction of the funds of said bank so made by said cashier and vice president of said bank, and, in effect, pleaded that said Cone did not mean to do wrong, that he acted upon the instructions of said Renick and Evans, officers of the bank. And, in effect, further pleaded that, although he (Cone) knew deposits were being made daily, and that many deposits, over a long period of time, were being withheld from the bank, he did not know they were being stolen, but believed that they were only being "held out," but why or for what purpose he did not know. Following are the special issues submitted and answers made thereto by the jury, viz.:

"Special Issue No. 1. Do you find and believe from a preponderance of the evidence that Clarence S. Cone Jr., prior to the closing of the bank by the Commissioner of Banking, knew that either Renick or Evans, cashier and vice-president, respectively, were withholding from the bank, funds of the bank with the intent on the part of either Renick or Evans to misapply said funds? Answer 'Yes' or 'No.' Answer: No.

"If you have answered special issue No. 1 by 'Yes' you need not answer special issue No. 2. If you have answered by No then answer special issue No. 2.

"Special Issue No. 2. Do you find and believe from a preponderance of the evidence that Clarence S. Cone, Jr., prior to the closing of the bank by the Commissioner of Banking, had knowledge of such facts as that a man of ordinary prudence and care, under the same or similar circumstances, would have known that Renick and Evans, cashier and vice-president respectively, were withholding from the bank, funds of the bank, with intent on the part of either Renick or Evans to misapply said funds? Answer 'Yes' or 'No.' Answer: No.

"Special Issue No. 3. Do you find and believe from a preponderance of the evidence that Clarence S. Cone, Jr., prior to the closing of the bank by the Commissioner of Banking, by his act and words, aided and assisted Renick or Evans, cashier and vice-president, respectively, in withholding from the bank funds of the bank with the intent on the part of either Renick or Evans to misapply said funds? Answer 'Yes' or 'No.' Answer: No."

On this verdict judgment was rendered in favor of appellees and against appellants that appellants take nothing against appellees and that appellees recover their costs, etc. From this judgment appellants duly prosecuted this appeal. By their propositions Nos. 3, 4, and 5, appellants urge that the answers of the jury to special issues Nos. 1, 2, and 3, supra, are respectively against the overwhelming preponderance of the evidence. Said propositions tested by the probative effect of all of the evidence adduced in support of said answers, especially by the following testimony of appellee Cone, are sustained: "* * * And he said that he was holding that up to go on and balance the books and show it just as though the deposit had been run through. I don't remember whether I asked him why he was holding that particular deposit or not. (Abstracted deposit, Eunice McKay, $833.00.) * * * I did not ask about the $833.00 deposit that had not come through. I don't remember why I didn't. (Subsequent balancing, two months later.) * * * I recall that I went to Mr. Renick at that time and asked about the $833.00 deposit. I did ask him more than the one time but I could not say how many times. He did not always tell me the same thing. I couldn't say whether he told me the same thing about the McKay account every time or not. (Subsequent balancing, one month later.) * * * I don't recall whether or not I went to Mr. Renick on that date. (Subsequent balancing, one month later.) * * * I don't remember whether I went to Mr. Renick on the occasion of that balance and asked him about the $833.00 deposit that had been out about seven months. (Subsequent balancing, one month later.) * * * I always asked somebody about every deposit that showed on the pass book and didn't show on my ledger; I talked to

the man who took the deposit, Mr. Renick, but I don't remember what he told me about each individual one. (Additional abstracted deposit, Eunice McKay, $1,334.85.) * * * I asked Mr. Renick about this one but I don't recall what he said in any particular instance. * * * Most of the time Mr. Renick would say that he was holding it out and to go on and balance the book and show it just the same as though it was in. I didn't know why he was holding it out but I just knew he was holding it out and I knew it was not going on the bank's books. (Abstracted deposit, Ben Silverstein, $275.98.) * * * I asked Mr. Renick about that deposit but I don't remember what he said in that particular case. I couldn't say exactly what he said but he generally told me to go on and balance the books, that he was holding it out. One time I forget which one he told me that they were offsetting some checks with it. The checks were supposed to be charged on the individual ledger account. (Abstracted deposit, William Gardner, $2,-640.03.) * * * I don't recall whether I went back and asked Mr. Renick about holding out that same deposit or not. (Subsequent balancing, one month later.) * * * I couldn't say whether I discussed with Mr. Renick the holding out of this deposit or not at that time. I don't remember whether I went to Mr. Renick every time a deposit was held out or not. I couldn't say, that is to say unless it was a new deposit. (Subsequent balancing, one month later.) * * * I am sure I asked somebody about that but I don't recall who nor do I remember what they told me. (Abstracted deposit, Mrs. Fritz Meyer, $101.00.) * * * I am not sure that I asked Mr. Renick or Mr. Evans about that when I balanced the book but I do not remember what they told me. (Additional abstracted deposit, Mrs. Fritz Meyer, $125.00.) * * * I don't know why that charge was not taken into consideration when I ran the list of checks from January 7th to July 16th * * * that $1,000.00 charge plus the $25.00 deposit that was not credited on the book plus $101.00 it was already out of balance makes a difference of $1,126.00. That is the exact difference between the amount I posted in the pass book on July 16, 1925, and the amount as reflected by the bank's ledger. (Two aforesaid abstracted deposits and false charge, Mrs. Fritz Meyer.) * * * I recall that I asked about that difference at that time; I asked Mr. Evans about that and he said to go on and balance it and show it, he was holding that out. (Abstracted deposit, G. C. Brooks, $801.00.) * * * I am sure I talked to Mr. Evans or Mr. Renick about it, one of them. I couldn't say specifically what they told me on that occasion. (Additional abstracted deposit, G. C. Brooks, $227.17.) * * * I again mentioned it to Mr. Evans but I do not remember

what I asked him or what he told me, that was his general answer, that he was holding it out and to go on and balance the books. (Second additional abstracted deposit, G. C. Brooks, $219.80.) * * * I am sure I asked him about it but I don't remember what he told me. * * * At one time he said he was offsetting some notes but I don't remember what account it was. (Third additional abstracted deposit, G. C. Brooks $300.-37.) * * * When I had a case of that kind and I was balancing the book, if it was out of balance I would ascertain how much it was out and start checking to see where it was out and in those cases I found some deposits were missing and I would take the books and see who made the entry and go to him and ask where that deposit was, I didn't have it on my ledger and in most cases they told me they were holding it out and for me to balance the book and show it as though it had come through. * * * They would tell me that the money had been received in the bank or that they had the deposit and that the bank owed the depositor that much money though not in those words * * * I did not know why they were holding them out. * * *" However, while this situation would have authorized the granting of a new trial by the court below, same confers no power on this court to render judgment adversely to that rendered by the trial court, there being, perhaps, more than a scintilla of evidence in support of said answers; in fact, we doubt if we would be authorized to reverse said judgment alone upon the meager evidence found in the record to sustain said findings of the jury.

■ Because of the fact that, the evidence before the court bearing upon the acts and conduct of said Cone showing his course of dealings with and making entries in the books of the bank and passbooks of its depositors, considered in the light of Cone's testimony offered in explanation thereof, failed to conclusively show the guilty knowledge of said Cone of the illegal acts and conduct of said Renick and Evans, whereby the money sued for was lost by the bank, which must be shown in this character of litigation, we will have to overrule appellants' proposition No. 1, viz. "Cone's admitted participation in losses sustained by the bank, by deliberately falsifying books and records of the bank entrusted to his charge, in order to conceal the fact that funds were being withheld from the bank, as a matter of law constitutes a willful, or at least a negligent, violation of his duties as agent of the bank." And proposition No. 2: "Cone's admitted participation in losses sustained by the bank, by deliberately falsifying books and records of the bank entrusted to his charge, in order to conceal the fact that funds of the bank were being withheld from the bank, as a matter of law constitutes wrongful abstraction or willful misapplica-

tion within the meaning of the condition of the bond." This holding is largely due to the following facts having been established by the evidence, viz.: That the money lost by the bank was taken by said Renick and Evans; that no evidence was adduced showing that Cone received any of the money sued for, or profited by his alleged illegal acts and conduct, or that of said officers; that the duties of Cone, as an employee of the bank during the period of his employment, were to keep the individual ledger and cash book and to balance the customers' passbooks; that some time he was assisted by the officers of the bank. From the above, we think it is made to clearly appear that the guilty knowledge of said Cone remained, under all of the admitted evidence, a question for the jury to determine, as Cone's said admissions must be viewed in the light of his testimony in ·explanation of his acts and conduct involved in said admissions.

■ In this state it is well established that one who falsifies a bank's books in order to conceal abstractions of funds which he knows that some one else is making is himself guilty of willful misapplication of such funds within the meaning of the bond sued upon in this case. National Surety Company v. First State Bank (Tex. Civ. App. 1922) 244 S. W. 217 (writ of error refused); Chapman, Commissioner v. Nieman (Tex. Civ. App. 1925) 276 S. W. 302; second appeal Austin v. Nieman (Tex. Civ. App.) 3 S.W.(2d) 128; Id. (Tex. Com. App.) 14 S.W.(2d) 794; American Surety Company v. Austin (Tex. Civ. App. 1928) 5 S.W.(2d) 626 (writ of error refused); Maryland Casualty Company v. Farmers' State Bank (Tex. Civ. App. 1924) 258 S. W. 584; Ferguson v. State (1916) 80 Tex. Cr. R. 383, 189 S. W. 271. There is no question that funds were abstracted by some one; and that Cone made the false entries which concealed, and thus aided in the perpetuation of, the abstractions. And, although Cone denies that he knew that the officers who intercepted the deposits at the window were using that money for their own benefit, he knew, or should have known, that the bank was not getting the benefit of it. If the bank got the money, or the benefit of the money, it would have to show up in some account, as cash or as a loan or discount, or bill receivable, or otherwise as an asset of the bank. Yet, if it did, the books of the bank would be out of balance, unless some corresponding credit was passed to the account of a depositor. But no corresponding credit was entered for such funds, and the express reason for not making such credits was that the books might be in balance; and the books were in balance. The above should have made it apparent to Cone that the bank was not receiving credit in any of its accounts for funds so intercepted on being received from depositors. Notwithstanding this, there remained the question for the jury to determine, viz. the guilty knowledge of Cone, viz. the knowledge of the spirit and intent that actuated Renick and Evans, respectively, in their course of dealings with money presented to be deposited and which was never permitted to enter the vault of the bank by reason that same was "held out" by either Renick or Evans.

■ It being assumed from the above that the jury was entitled to treat Cone's attempted explanation as satisfactory, and if so accepted to thereby absolve appellees from any liability to appellants on their alleged cause of action, it was the appellants' burden to show the jury, by the introduction of proper testimony, that such explanations were not sufficient to exculpate appellees from such liability.

■ This brings us, in logical order, to consider appellants' sixth proposition: "After the plaintiffs had examined Cone with reference to the seven accounts contained in the record herein, in which specific losses occurred for which recovery is sought, plaintiffs attempted to examine Cone with reference to shortages and false entries made by Cone in other accounts in the bank. Plaintiffs had in the court room the original records of the bank of numerous additional accounts, including the account of a Dr. W. F. L. Knoll. They sought to lay the predicate for the admission in evidence of the ledger sheets and pass books of such additional accounts for the purpose of showing that Cone had made numerous and repeated false entries therein." The admission of this testimony was objected to on the ground that no losses in such additional accounts were sued for. Appellants, in support of the admissibility of said testimony, urged that the accounts so objected to, and Cone's testimony with reference thereto, were admissible upon the issue of Cone's knowledge that money of the bank was being misapplied during the time he was bookkeeper, and restricted their offer to such purpose. Cone admitted that he knew that deposits were being held out of the bank, and that, notwithstanding such knowledge, he made entries which concealed such fact. He attempted to ameliorate the fact of such knowledge when he testified, in effect, that each time a deposit was held out he went to the officer who was holding the deposit out and asked him the reason therefor; that, in the case of each inquiry so made, the officer told him that he was "just holding out" the deposit, to go ahead and balance the books as if the deposit had come through; that in each instance this explanation completely satisfied his mind. In view of Cone's protestation of innocence, it was appellants' burden to show the jury that his explanation was not satisfactory. This could not be done by direct evidence; therefore recourse to circumstantial evidence was undoubtedly available for that purpose, presenting other similar acts and conduct on the

part of Cone to that involved in the seven specified accounts in which deposits were alleged to have been held out, and constituting appellants' cause of action.

■ The evidence excluded was both material, competent, and admissible on the issue raised by the pleadings as to the state of Cone's mind with which he acted in making the entries that deceived the depositors and made the books of the bank appear to be in balance by withholding the entry thereon of the deposits so made, thereby falsifying the records of the bank to conceal such facts. The generally recognized rule is that, where the issue is a state of mind with which a person acts, both parties should be allowed a wide field in proving the general course of the person's conduct under investigation, with each detail and ramification which might tend to color the conduct or characterize the intent which actuated it. U. S. Fidelity & Guaranty Co. v. Egg Shippers' Strawboard & Filler Co. (C. C. A. 8th, 1906) 148 F. 353; Massillon Mortgage Co. v. Independent Indemnity Co. (1930) 37 Ohio App. 148, 174 N. E. 167. The fact that no recovery is sought by appellants for the losses caused by the other false entries which they attempted to show was no barrier to proving them merely on the circumstances of Cone's guilty knowledge in making the false entries upon which recovery was sought. In the offering of this proof, there could be no element of surprise, the petition stated the amount involved in Cone's alleged false entries were large and that the entries occurred at various times between the years 1923 and 1926; and the particular losses in the seven particular accounts, for which recovery was sought, were set out in the petition as constituting only some of the transactions with which Cone was connected. Cone had already testified that there were many additional shortages, and that he had made many additional false entries, that he could not say how many there were, or even hazard a guess. The excluded testimony was offered by appellants to show how many additional false entries there were and the circumstances under which same were made, not through some unknown person or by some disconnected testimony, but by producing the books and records which Cone himself kept. In excluding this testimony, material error was committed, for which this cause should be, and is, reversed and remanded.

Reversed and remanded.

## On Rehearing.

JONES, C. J.

On a former day of this term of court, the above cause was reversed and remanded because of error of the trial court in refusing to admit certain evidence offered by appellant, and appellee has filed a motion for rehearing. We have carefully considered said motion, with the result that we see no reason for changing our opinion that the trial court committed error in refusing to admit the testimony. This question is fully discussed in the opinion rendered by former Associate Justice VAUGHAN, and appellee's motion for rehearing is overruled.

■ After again analyzing the evidence in this case, as set out in the original opinion, in the light of the opinion of the Commission of Appeals in the case of Austin, Commissioner, v. Neiman, 14 S.W.(2d) 794, we have concluded that this court erred in reversing and remanding the case for another trial, and that the judgment this court should have rendered was to have reversed and rendered the case in favor of appellants.

It clearly appears from the record, and is admitted in appellee's motion for rehearing, that the case was fully developed in the trial as to the defenses of appellees, and that the rejected testimony, which called for a reversal of the case, is only cumulative of other testimony on the same issue offered by appellants. Our conclusion is that the legal effect of the testimony admitted in evidence conclusively shows that Cone actively participated in the unlawful acts of the cashier and vice president of the Navasota Bank, by means of which large sums of money were lost to the bank and applied to the personal use and benefit of said bank officials. Such conclusion is impelled by the announcement of the law in the case of Austin, Commissioner, v. Neiman, supra, under facts that cannot be distinguished from the facts of the instant case.

In the reported case, Neiman as bookkeeper, on the request of an officer of the bank, accomplished the same wrongful purpose as was accomplished by Cone at the request of the vice president and cashier of the Navasota Bank in the instant case; also in the reported case Neiman testified as to his ignorance of the wrongful purpose of the officer of the bank, just as in the instant case Cone testified as to his ignorance of the wrongful purpose of the said officers of the Navasota Bank. The evidence shows, in the reported case, that Neiman manipulated certain books of the bank in a way that would prevent discovery of the shortage, and, in the instant case, the undisputed evidence shows that Cone manipulated bank, and customers' pass, books, in a way that concealed the wrongful acts of the said officers of the Navasota Bank. In respect to this question, the instant case is stronger in evidentiary facts than those in the reported case.

In the reported case, it was held that, notwithstanding Neiman's testimony of ignorance, the evidence "established beyond controversy that Neiman aided and assisted Lowe in the unlawful appropriation of the bank's funds. * * *" This conclusion of the Commission of Appeals, approved by the

Supreme Court, compels the announcement of the same conclusion in the instant case, that the evidence establishes beyond controversy that Cone aided and assisted the vice president and cashier of the Navasota Bank in the unlawful appropriation of the bank's funds. Therefore this court, on its own motion, sets aside its former order reversing and remanding this cause for another trial, and here renders judgment against Cone in the sum of $7,248.76, with interest at the rate of 6 per cent. per annum from the date of the trial of the case in the district court, and renders judgment against the American Surety Company, as surety on Cone's fidelity bond, in the sum of $2,500, together with interest at the rate of 6 per cent. per annum from the date of the judgment in the district court.

Motion of appellee for rehearing overruled, and the court on its own motion renders the judgment above described. In view of the judgment here entered, appellees have the right to file a motion for rehearing without regard to their former motion.

Reversed and rendered.