Central Mutual Insurance Company, Plaintiff in Error, v. The Employers' Liability Assurance Corporation, Ltd., of London, England, Defendant in Error.

**Gen. No. 37,303.**

Heard in the second division of this court for the first district at the February term, 1934. Opinion filed April 30, 1934. Rehearing denied May 14, 1934.

WILLIAM LEVINE, for plaintiff in error.

CHURCH, HAFT, ROBERTSON, CROWE & SPENCE, for defendant in error; BURT A. CROWE, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action on a fidelity bond issued by the defendant, claiming that A. H. Karatz, who was secretary and manager of plaintiff insurance company, had abstracted $1,823.66 of plaintiff's money and converted it to his own use through connivance with Gertrude C. Witzleb, plaintiff's cashier and bookkeeper. The case seems to have been tried three times; the first trial resulted in a verdict finding the issues for the defendant; a new trial was awarded; on the second trial, on motion of plaintiff, a juror was withdrawn, the cause continued, and the present trial was before the court without a jury; there was a finding and judgment in defendant's favor, and plaintiff prosecutes this writ of error.

Defendant, by the bond on which plaintiff bases his case, agreed to reimburse plaintiff for pecuniary loss, not exceeding $5,000, which plaintiff might sustain "by an act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication on the part of GERTRUDE C. WITZLEB, . . . directly or through connivance with others, committed by the Employed in connection with the duties of any position to which she may be assigned."

It appears from the evidence that about July 7, 1927, plaintiff, through A. H. Karatz, its secretary and general manager, employed Gertrude C. Witzleb as its cashier and bookkeeper. She. was subject to the orders and directions of Karatz who was in control and charge of the books of account and funds of the company. Miss Witzleb acted as plaintiff's cashier and bookkeeper from the time of her employment until she was discharged by the president of the company October 2, 1928. Shortly after she began her work and

throughout the whole period she was employed by plaintiff, Karatz from time to time asked her for money, which she kept in a cash box; she would give him the amounts requested and make out an I. O. U. and put it in the cash box. She did not enter on the books the fact that she had given the money to Karatz, stating as a reason that she did not want to enter cash when she held I. O. U.'s from Karatz and not the money. She kept the books under Karatz' supervision. Some of the money she gave to Karatz, he told her, was for expense and from time to time he paid back moneys thus received, and his I. O. U.'s were taken up.

The evidence further shows that plaintiff had a card system for keeping track of the accounts of its customers, on which cards the names and addresses of the customers were entered and payment of premiums noted, which payments Karatz told her he had received. She also wrote on the cards the pages of the cash book purporting to show where such entries were made in the cash book, but which entries were not in fact made. She did not enter the amount of these premiums on the books because, as she testified, she had not received the cash from Karatz. It further appears that she made daily reports to the president of the company in which there was no mention of the claimed receipt of cash as evidenced by the customers' cards, above mentioned, nor was there any reference made to the fact that she was giving money to Karatz, for which she held his I. O. U. slips. These irregularities were first brought to the attention of plaintiff's president about October 1, 1928, at which time Miss Witzleb and Karatz were discharged. It was agreed that Karatz' shortage amounted to $1,823.66, being the amount for which plaintiff sues.

Plaintiff contends that Karatz stole this amount of money and that he was aided and abetted by Miss

Witzleb, and that this constituted a breach of defendant's bond.

We think the evidence falls short of showing that Karatz stole the money from the plaintiff company, and it is clear that Miss Witzleb did not think he was stealing the money. Karatz was secretary and general manager and she was under his control. The method of drawing money, as shown by the evidence, was a custom in vogue from the time Miss Witzleb entered upon her duties. We think it clear it cannot be said, as a matter of law, that the claimed shortage of $1,823.66 resulted from a "wrongful abstraction or wilful misapplication on the part of Gertrude C. Witzleb, . . . directly or through connivance with others." These were questions of fact. Moreover, so far as the record discloses, it is undisputed that plaintiff insurance company did not contend until suit was brought that Karatz had stolen its money, because on October 1, 1928, after it learned that he had taken the $1,823.66 of plaintiff's money in the manner above described, plaintiff, Harold Shlensky, its president, and Karatz, its secretary and manager, entered into a written agreement which recited that each had, or claimed to have, demands against the other, and that the parties were desirous of settling all such claims and demands, and it was agreed that plaintiff and its president should forthwith pay $400 to Karatz, the receipt of which was acknowledged, and that plaintiff and its president waived all claims and demands of every kind and character for any indebtedness against Karatz, up to the sum of $1,850; and it was further agreed that if Karatz was found to be indebted to plaintiff in a sum in excess of $1,850, he would give plaintiff his note, due one year after date, guaranteed by T. Karatz, for such excess. It was further agreed that Karatz would not solicit any of plaintiff's policyholders or members for insurance or bond business for

a period of one year, and mutual releases and discharges were further provided for.

It is clear from this agreement that plaintiff and Karatz were settling all their differences and plaintiff not only released the $1,850 which it claimed was due from Karatz to it, but gave him $400 in addition. Plaintiff having by this agreement settled its claim against Karatz for the alleged shortage, obviously has no right of action on the bond in suit.

We are unable to agree with plaintiff's contention that the facts in the instant case are exactly in point with the facts in *Austin v. Nieman* (Tex. Civ. App.), 14 S. W. (2d) 794, and *Chapman v. Nieman* (Tex. Civ. App.), 276 S. W. 302, in which the defendant was held liable on a fidelity bond. In that case suit was brought on a fidelity bond by the commissioner of banking and the First State Bank of Malone, to recover against Nieman as principal, and the Maryland Casualty Co. as surety. The bond secured against loss of money "wrongfully abstracted, or wilfully misapplied by said Nieman," who was bookkeeper and assistant cashier of the bank. The president of the bank, Lowe, had abstracted and appropriated to his own use $43,000. The court instructed a verdict for the defendant. On appeal the judgment was reversed and the cause remanded, the court holding that the question was one of fact for the jury. (276 S. W. 302, *supra.*) There was a retrial of the case before the court without a jury and a finding and judgment in favor of the defendants. The court held that whether there was a violation of the bond by Nieman was a question of fact and on appeal the judgment was affirmed. *Austin v. Nieman* (Tex. Civ. App.), 3 S. W. (2d) 128. On a further appeal the judgments of the Court of Civil Appeals and the trial court were reversed and judgment entered in favor of plaintiff. (14 S. W. [2d] 794, *supra.*) In that case Lowe, the president of the bank,

pleaded guilty to embezzlement of the bank's funds and was sentenced to the penitentiary, and suit against Nieman was predicated upon the fact that he, as bookkeeper, aided and assisted Lowe in wrongfully converting the bank's funds by keeping the books, by means of a "dummy" ledger, in such a way as to conceal the shortage.

From what we have said, we think it clear that the facts in the *Nieman* case are not analogous to the facts in the instant case. In the *Nieman* case the president of the bank who abstracted the funds was guilty of embezzlement and the bookkeeper and assistant cashier, Nieman, knew the funds were being embezzled over a period of time, kept dummy books, and helped conceal from the bank the fact that the president of the bank was embezzling funds; while in the instant case, there was no such wrongdoing on the part of Miss Witzleb, and the evidence is to the effect that the plaintiff insurance company, by its written agreement with Karatz, above mentioned, took the position that Karatz had a claim against it for more than the amount of money it now claims he had wrongfully abstracted.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.